# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



KATHY FARINA, ROSANNA
GELARDI and ADDOLORATA
CUPOLA,

    Plaintiffs,

v.

CICCONE FOOD PRODUCTS, INC.,

    Defendant.

No. 04 C 2383

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Ciccone Food Products, Inc. ("Ciccone Food") motion for summary judgment. For the reasons stated below, we deny Ciccone Food's motion for summary judgment in its entirety.

## BACKGROUND

Plaintiff Kathy Farina ("Farina") was employed by Ciccone Food as an office assistant from July of 2001 until August of 2002, when Farina's employment was terminated. Farina alleges that the owner of Ciccone Food, Salvatore Ciccone ("Ciccone"), the general manager of Ciccone Food, Joseph Minerva ("Minerva"), and

1

other management at Ciccone Food regularly engaged in sexual harassment.

Farina alleges an array of alleged improper comments and misconduct. For example, Farina alleges that Minerva, the general manager, asked her questions such as what color underwear she wore, asked her if she performed certain sexual acts, and asked if she would perform a sexual act upon Minerva. Farina also alleges that Minerva asked her about her sexual activity outside of work and whether or not she had sex in her car. Farina also alleges that Minerva made jokes and gestures of a sexual nature in her presence. Farina also claims that Minerva repeatedly stood behind her and rubbed himself against her. Farina claims that when she complained about Minerva's conduct, Minerva retaliated by delivering her orders late which negatively reflected upon Farina's work performance. Farina also alleges that Ciccone swore in her presence calling her stupid and an idiot. Farina claims that Ciccone's conduct created an intimidating and hostile atmosphere at work. Farina claims that Ciccone dealt with all female employees in such a manner.

Co-plaintiff Rosa Gelardi ("Gelardi") worked for Ciccone Food as an office assistant from July of 2001 until August of 2002, when she claims she was constructively discharged. Some examples of the conduct alleged by Gelardi include her contention that Ciccone, while alone with Gelardi, made improper comments of a sexual nature. Gelardi also alleges that Ciccone told her he dreamed of them being in bed together. Gelardi alleges that Ciccone told her that certain parts of her looked good and asked her to come and sit on his lap. Ciccone also allegedly asked to kiss

Gelardi and asked to touch her breasts. Ciccone also allegedly asked to have sex with Gelardi and inquired about sex between Gelardi and her husband. Ciccone also allegedly told Gelardi: "Be careful because when I have a chance when we are alone I will grab you." (Compl. 10). According to Gelardi, on numerous occasions Ciccone grabbed her hand or tried to rub her legs. Gelardi also claims that on one occasion Ciccone grabbed both of her hands and tried to forcibly kiss her. Gelardi also claims that Ciccone told her that he would grab her in the supply room if he found her there alone. Gelardi also claims that she heard Minerva make comments about Farina's underwear, co-Plaintiff Dora Cupola's ("Cupola") breasts, and about the performance of sexual acts. Gelardi also alleges that Ciccone used vulgarities in the workplace and intimidated female employees.

Cupola was also an office assistant and she alleges that Minerva asked her to take off her shirt and asked if he could look under her skirt. Minerva also allegedly asked Cupola about her preferences when having sex and what sexual acts Cupola was willing to engage in. Minerva also allegedly asked Cupola to perform sexual acts upon him and Minerva allegedly made comments about Cupola's breasts. Minerva also allegedly made oral comparisons between Minerva and a poster hanging on the wall which depicted women in their underwear. Cupola also claims that on some occasions when she picked up invoices there was pornography included in the invoices. Cupola also alleges that Ciccone used vulgar language and intimated female workers. Cupola claims that she was constructively discharged in August of 2002.

Plaintiffs brought a two count complaint alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), and retaliation in violation of Title VII (Count II). Ciccone Food has moved for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a

"metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Local Rule 56.1

Plaintiffs filed a statement of additional facts pursuant to Local Rule 56.1. Ciccone Food has not filed any response to Plaintiffs' statement of additional facts and we note that Ciccone Food even acknowledges in its reply brief that it received Plaintiffs' statement of additional facts. (Reply 2). We also note that we specifically denied Ciccone Food's prior motion for summary judgment without prejudice due to its failure to comply with Local Rule 56.1. Since, Ciccone Food has not responded to Plaintiffs' statement of additional facts, the facts are deemed undisputed and admitted. *Dent v. BestFood*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). We note that Plaintiffs have filed a motion

5

specifically seeking to have Plaintiffs' statement of additional facts deemed admitted, but as we have already applied Local Rule 56.1 and deemed the statement of additional facts admitted, Plaintiffs' motion is denied as moot.

## II. Hostile Work Environment

Ciccone Food argues that none of the Plaintiffs were subjected to a hostile work environment. Under Title VII, an employer is prohibited from maintaining a workplace that is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)). Factors considered in determining whether there is a hostile work environment include: 1) the "frequency of discriminatory conduct," 2) "its severity," 3) whether conduct is "physically threatening or humiliating" or merely offensive, 4) whether conduct "unreasonably interferes with [the plaintiff's] work performance," and 5) the "social context in which events occurred." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002). The work environment must be shown to be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive. . . ." *Id.*

In the instant action, Plaintiffs have provided a litany of alleged oral statements and actions by Minerva and Ciccone that constituted sexual harassment. The evidence

that Plaintiffs point to shows that the alleged harassment was pervasive, frequent, and severe, and could reasonably have interfered with their ability to perform their work. The alleged misconduct was the type of conduct that would be humiliating and degrading to Plaintiffs. Plaintiffs claim that they repeatedly asked Minerva and Ciccone to stop the harassment, but that it continued. Plaintiffs have devoted several pages solely to listing some of the alleged misconduct by Minerva and Ciccone. We need not go into detail and explicitly list all of the alleged misconduct. Not only do Plaintiffs contend that Minerva and Ciccone engaged in such severe and pervasive misconduct, Ciccone Food has admitted pursuant to Local Rule 56.1 that Ciccone and Minerva engaged all such misconduct. Ciccone Food attempts to argue that Plaintiffs did not subjectively find the work environment abusive, but such a contention is completely contrary to the many admissions by Ciccone Food regarding the distress caused to Plaintiffs by the misconduct, their protests, and the many complaints Plaintiffs made about the conduct. Therefore, we cannot find that no reasonable trier of fact could conclude that Plaintiffs were not subjected to a hostile work environment.

III. *Ellerth* Affirmative Defense

Ciccone Food raises the *Ellerth* affirmative defense as a basis for summary judgment. In accordance with the rulings in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), "[e]mployers are strictly liable for harassment inflicted by supervisors, subject to an

7

affirmative defense when the harassment does not result in a tangible employment action." *Williams v. Waste Management of Illinois,* 361 F.3d 1021, 1029 (7th Cir.2004). If the employer shows that no tangible employment action was taken against the plaintiff, the plaintiff must show that the defendant "was negligent in discovering or remedying the harassment." *Durkin v. City of Chicago,* 341 F.3d 606, 612 (7th Cir.2003). An employer may defend against allegations of negligence by establishing: 1) "it exercised reasonable care to discover and rectify promptly any sexually harassing behavior," *Id.,* and 2) the plaintiff "failed to take advantage of any preventive or corrective opportunities provided by the [defendant] to otherwise avoid harm." *Hardy v. University of Illinois at Chicago,* 328 F.3d 361, 364- 66 (7th Cir.2003). The employer need only exercise reasonable care to prevent and promptly resolve sexual harassment complaints, but the employer is not required to show that its efforts were successful. *Id.* The plaintiff must also show that the "employer had notice of sexual harassment. . . . ." *Durkin,* 341 F.3d at 612; *Cooper-Schut,* 361 F.3d at 426. When an employer designates a person to accept harassment complaints, the plaintiff is expected to use that channel and to defeat a motion for summary judgment, the plaintiff must also show that "she provided the employer with enough information so that a reasonable employer would think there was some probability that she was being sexually harassed." *Durkin,* 341 F.3d at 612.

Ciccone Food argues that at least in regards to Gelardi and Cupola, there was no tangible employment action because they simply allege that they were constructively

discharged. However, we need not resolve the issue of whether or not the alleged constructive discharges of Gelardi and Cupola constituted a tangible employment action because, as will be explained below, Ciccone Food cannot meet the requirements of the affirmative defense. Ciccone Food begins its arguments by contending that Minerva is a co-worker, rather than a supervisor, and that for whose alleged harassment Ciccone Food is not strictly liable. Minerva was the General Manager at Ciccone Food. Plaintiffs were merely office assistants at Ciccone Food. Thus, it would be improper to characterize Minerva as merely a co-worker of Plaintiffs. We need not delve into the evidence on this issue because, despite Ciccone Food's statement to the contrary, in its memorandum in support of its motion, Ciccone Food admits pursuant to Local Rule 56.1 that Minerva was a supervisor of Plaintiffs. (SF 3,4; SAF 18, 24-25).

Ciccone Food admits a variety of facts pursuant to Local Rule 56.1 that foreclose Ciccone Food from protection under the *Ellerth* defense. Ciccone Food has not pointed to evidence that shows that it effectively implemented a sexual harassment policy. It is admitted by Ciccone Food that the Ciccone Food's policy book was not given to every existing employee, was not given to new employees, and that there is not a copy of the policy posted in the office. (SAF 12, 13, 15, 16). It is also admitted, pursuant to Local Rule 56.1, that Ciccone who is alleged to have committed much of the sexual harassment, was the individual in charge of enforcing the sexual harassment policy. (SAF 18, 19). It is admitted that if an employee had a complaint about both

9

Minerva and Ciccone, the employee was supposed to make a complaint to Carol Bisping ("Bisping") or Ciccone's wife. (SAF 21). It is admitted that Plaintiffs repeatedly complained to Bisping and Ciccone's wife and that Plaintiffs told Ciccone to stop the harassment, but the harassment continued. (SAF 167-203). Thus, the undisputed evidence shows that Ciccone Food did not properly run its sexual harassment reporting policy and Ciccone Food admits that Plaintiffs made efforts to report the alleged harassment. Therefore, Ciccone Food cannot avail itself of the *Ellreth* affirmative defense.

IV. Constructive Discharge

Ciccone Food argues that neither Cupola or Gelardi were constructively discharged. In order to establish a constructive discharge, an employee must show that her "working conditions were so intolerable that a reasonable person would have been compelled to resign." *Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 877 (7th Cir. 1999)(quoting *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996)). The condition "must be intolerable because of unlawful discrimination." *Id.* For a constructive discharge to occur, the working conditions must be even worse than are necessary to constitute a hostile work environment because in a hostile work environment the "employee is expected to remain employed while seeking redress." *Tutman v. WBBM-TV, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000)(quoting *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998)).

In the instant action, there is an extensive list of admitted misconduct by Minerva and Ciccone laid out in great detail in Plaintiffs' statement of additional facts. It is admitted by Ciccone Food that Cupola and Gelardi were continually subjected to oral and physical harassment and despite Plaintiffs' protests and complaints the harassment continued unchecked. We cannot find that no reasonable trier of fact could not find that the conditions that Cupola and Gelardi endured became intolerable to the extent that they were constructively discharged.

## CONCLUSION

Based on the foregoing analysis, we deny Ciccone Food's motion for summary judgment in its entirety. We also note that Ciccone Food has filed a "Motion . . . To Move Announcement of Decision on Motion to Dismiss To a Date After July 6, 2005." Ciccone Food does not have a motion to dismiss pending before this court and this court did not set any date for an announcement of its ruling on Ciccone Food's motion for summary judgment. Regardless, since we have already ruled on Ciccone Food's motion for summary judgment Ciccone Food's "Motion . . . To Move Announcement of Decision on Motion to Dismiss To a Date After July 6, 2005" is denied as moot.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 12, 2005